**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

In the Matter of                                        )
the Estate of                                            )        ROW Folio No. 17012-SEM
GARY M. GUSOFF                                   )

## ORDER

WHEREAS, Gary M. Gusoff (the "Decedent"), died on September 19, 2018; the Defendant left behind several heirs including his wife, Linda Rich Gusoff, his two daughters Gloria L. Gusoff and Valerie J. Gusoff, and others identified in his last will and testament;[1]

WHEREAS, on December 3, 2018, the Decedent's will was admitted to probate and his wife, who was named as the trustee of the will, Linda Rich Gusoff (the "Executrix") was issued letters testamentary;[2]

WHEREAS, the Executrix filed an inventory of the estate on June 20, 2019 and her first accounting on November 16, 2022;[3]

WHEREAS, on February 23, 2023, the Decedent's daughters filed exceptions to the accounting asserting that (1) the Executrix's valuation of the Decedent's business was incorrect; (2) the Executrix was commingling or misappropriating estate assets; and (3) the Executrix should be removed (the "Exceptions");[4]

---

[1] *See* Docket Item ("D.I.") 1, 4.

[2] D.I. 5.

[3] D.I. 11, 20.

[4] D.I. 29.

WHEREAS, on February 28, 2023, the Register of Wills mailed the Exceptions to the Executrix, advising the Executrix of the deadline to respond to the Exceptions under Court of Chancery Rule 197(b) (no later than 30 days from the date of the letter notice);[5]

WHEREAS, this action was assigned to me in May 2023, and on September 13, 2023, I issued a rule to show cause directing the Executrix to appear at a hearing on October 10, 2023 and explain why she failed to timely respond to the Exceptions and why the Exceptions should not be granted;[6]

WHEREAS, the Executrix appeared at the October 10, 2023 hearing and I directed her to respond to the Exceptions within 20 days;[7] I further explained that her response "should include how she came to the valuation of the law practice of [the Decedent], why she co[m]mingled funds in the estate checking, why she used the estate funds for her own personal expenses, what steps she has taken to pay the outstanding claims and unpaid funeral expenses, and what steps she has taken to protect the monetary and personal property bequested to all the heirs[;]"[8] I further directed the Executrix to "provide a copy of the Court Docket from Pennsylvania

---

[5] D.I. 30.

[6] D.I. 33. The Executrix submitted an address correction shortly thereafter (D.I. 36) and the rule was reissued to the correct address. D.I. 37.

[7] *See* D.I. 38.

[8] *See id.*

showing when the litigation was initially filed, hearing dates and a summary of where the litigation is at this time[;]"[9]

WHEREAS, on or around October 30, 2023, the Executrix submitted paperwork to the Register of Wills, which was docketed on November 2, 2023 (the "Submission");[10] on December 4, 2023, the Register of Wills invoiced the Executrix for her filing, and, for a time, the filing fees went unpaid;[11]

WHEREAS, the Submission is 387-pages long and difficult to comprehend;[12] the cover page to the Submission purports to respond to my inquiries at the hearing and provides: (1) the Decedent's law practice had a checking accounting of $500,000.00 and other assets of $92,000.00, purportedly supporting the valuation of $750,000.00 reflected in the Executrix's inventory and first accounting; (2) commingling was explained as "[c]hecks belong to wife & [the Decedent;]" (3) outstanding claims and funeral expenses will be paid after "trial in [Pennsylvania;]" (4) the estate has been reported to police agencies in Delaware and Pennsylvania, and (5) an attorney is assisting with the estate and trial;

---

[9] *Id.*

[10] D.I. 39. A portion of the Submission was corrupted upon e-filing and was refiled on January 12, 2024. D.I. 41. I have reviewed that portion and include it in my discussion of the Submission.

[11] D.I. 40.

[12] *See* D.I. 39.

3

WHEREAS, the rest of the voluminous Submission includes (1) the Executrix's complaints to the Consumer Financial Protection Bureau, (2) bank statements from Bank of America, PNC, Firstrust, Wells Fargo, and BB&T, (3) a notice of deficiency regarding income taxes, (4) a notice from the Social Security Administration regarding overpayment of benefits to the Decedent for the benefit of the Executrix, (5) copies of checks, (6) communication regarding reconciling the Decedent's business accounts and clearing out his office, (7) an email chain between the Executrix and Encompass, (8) a Philadelphia police report, (9) letters between the Executrix and Joseph Cardona and from the Executrix to others about Joseph Cardona, (10) lists of the Decedent's cases dated July 7, 2015 and February 8, 2018, (11) an escrow report form the Decedent's law firm, (12) various dockets relating to the Decedent's cases and clients, (13) letters and emails from or with the Decedent relating to his law practice before his death, (14) a response to the Exceptions dated May 8, 2023 (the "Response"), (15) a letter addressed to Register of Wills staff, (16) emails from the Register of Wills to the Executrix explaining deficiencies in the accounting, and (17) the Decedent's 2015 W-9;

WHEREAS, in the Response, the Executrix blames others for her delay and the sloppiness of the accounting; the Executrix in the Response affirms her valuation of the Decedent's business and appears to concede that she used estate money for personal expenses, although averring that the money was "married property[;]"

4

WHEREAS, on January 22, 2024, I wrote to the Executrix raising concerns about her failure, despite numerous reminders, to pay the filing fee for the Submission and directed: "If you do not pay all outstanding filings fees and ensure documentation is submitted addressing each inquiry restated above by the end of the month (January 31, 2024), you will be removed as the representative of this estate and an appropriate judgment will be entered against you[;]"[13]

WHEREAS, thereafter, the Executrix paid the outstanding fees and filed another set of exhibits, totaling 190 pages, with a cover page and attachments, many of which appear largely duplicative of the Submission (the "Second Submission," with the Submission, the "Submissions");[14] through the cover page, the Executrix, among other things, (1) repeats her allegations that funds were allegedly stolen from the Decedent's accounts; (2) identifies various cases that the Decedent's law firm was handling before his death and their purported values; (3) reiterates her belief that she is doing her best to administer the estate, which she believes is "very expensive[;]" and (4) explains that a new attorney is working on a petition to bring her concerns before a court in Pennsylvania; within the Second Submission is what looks to be a draft petition for the Court of Common Pleas of Philadelphia, Orphans'

---

[13] D.I. 42 (emphasis omitted).

[14] *See* D.I. 43.

Court Division, which does not contain a case number or any indicia showing it was filed with the Pennsylvania court;[15]

WHEREAS, upon the filing of the Second Submission, on January 30, 2024, I took this matter under advisement;

WHEREAS, administrators of Delaware estates serve in a fiduciary capacity and are "responsible for compiling the inventory of Decedent's estate, managing the Decedent's assets, and paying the Decedent's debts[;]"[16] administrators further have "a duty of loyalty requiring [them] to act, at all times, in the best interests of the estate[;]"[17]

WHEREAS, under 12 *Del. C.* § 1541(a) "[i]f an executor or administrator neglects official duties, the Court of Chancery may remove the executor or administrator from office[;]"[18]

WHEREAS, in considering whether removal is warranted, "I am guided by several overarching principles of estate administration, including: (1) that expenditures should serve the best interests of the estate; (2) that the personal representative should protect and preserve the estate; (3) that charges incurred

---

[15] D.I. 43 at pp.117–119. There is, attached, a purported certificate of service dated November 15, 2023, but I have serious concerns about its authenticity. *See id.* at p.122.

[16] *Dixon v. Joyner*, 2014 WL 3495904, at *3 (Del. Ch. July 14, 2014).

[17] *In re Rose*, 2019 WL 2996887, at *3 (Del. Ch. July 9, 2019).

[18] 12 *Del. C.* § 1541(a).

should be 'proportionate to a benefit that the estate receives or a detriment that the estate avoids[;]' (4) that action is taken 'in a timely manner so as to achieve a benefit (or avoid a detriment) for the estate[;]' and (5) that estates should be settled, distributed, and closed promptly[;]"[19]

**IT IS HEREBY ORDERED** this 30th day of April 2024, as follows:

1.      The Executrix is removed as personal representative of the estate under 12 *Del. C.* § 1541(a) and the letters granted to her are hereby revoked. With her removal, any person may move for their appointment as successor administrator.[20] The Executrix will not, however, be released from her bond and will remain answerable for her service.  She shall also (1) protect and preserve all estate property and records in her possession, custody, or control and (2) ensure that same are provided to the appointed successor within 10 days of their appointment.

2.      Despite their considerable length, the Submissions do not answer or resolve the concerns I raised with the Executrix and ordered her to address.  The Submissions do not provide any explanation, let alone persuasive explanation, why the Executrix commingled funds in the estate checking account, why she used the estate funds for her own personal expenses, what steps she has taken to pay the

---

[19] *In re Nastatos*, 2023 WL 8269833, at *7 (Del. Ch. Nov. 30, 2023) (citations omitted).

[20] *Cf. Gusoff v. Gusoff*, C.A. No. 2021-0580-SEM, D.I. 1 (Del. Ch.) (attaching an affidavit from a named successor waiving her right to be appointed in favor of the Decedent's children).

outstanding claims and unpaid funeral expenses, and what steps she has taken to protect the monetary and personal property bequeathed to all the heirs. The Executrix has also failed to provide a copy of the court docket from Pennsylvania, despite an explicit direction to do so. It appears, instead, that there is no ongoing case in Philadelphia, despite the Executrix's representations.

3. The Executrix's failure to comply with my clear directives lends further support to the insinuations in the Exceptions that the Executrix is not an appropriate person to continue administering the Decedent's estate. As does the Executrix's failure to timely pay the Register of Wills' invoice for docketing her filings. Reviewing this matter holistically, I have serious concerns about the Executrix's administration to date and am left without any confidence that she will be an effective fiduciary moving forward.

4. The administration of this estate has been protracted, delayed, and frustrated by the Executrix. Rather than respond to my specific concerns, the Executrix has tried to bury the Court and the Register of Wills in paperwork. But the Executrix's voluminous filings fail to convince me that the Executrix is ready, willing, and able to probate this estate properly and promptly for the benefit of all heirs. Having reviewed the Submissions, I have serious, unanswered concerns regarding the Executrix's service to date and her ability to bring this matter to a prompt resolution. Good cause supports the Executrix's removal.

8

5.	This is a final report under Court of Chancery Rule 143 and exceptions may be filed under Court of Chancery Rule 144.

**IT IS SO ORDERED.**


*/s/ Selena E. Molina*
Magistrate Selena E. Molina



CC:	Gloria L. Gusoff (Via U.S. Mail)
	Valerie J. Gusoff (Via U.S. Mail)